## PARKS et al. v. LEFEBER.

No. 21057. Opinion Filed March 21, 1933.

Hagan & Gavin and J. A. Moran, for plaintiffs in error.

Irwin Donovan, for defendant in error.

Chas. E. Bush, A. J. Kriete, Tom Wiley and W. D. Calkins, amici curiae.

ANDREWS, J. This cause is in this court on appeal from a judgment of the district court of Wagoner county decreeing a foreclosure of a real estate mortgage on the land involved in this action in favor of the defendant in error and barring the plaintiffs in error and all persons claiming by, through or under them, or any of them, from all right, title, interest, lien, estate, or equity of redemption in and to that real estate.

A determination of the issues involved herein requires a construction by this court of the provisions of the last will and testament of O. F. Parks, deceased.

The first provision thereof was that all just debts be paid. The second provision thereof was as follows:

"My estate consists of my undivided one-half of the community estate of myself and wife, Laura Parks, situated in the state of Texas, and the state of Oklahoma."

The other provisions thereof were as follows:

"Third. I give and bequeath all my estate that I may be seized and possessed of at the time of my death, both real and personal to my beloved wife, Laura Parks, in trust during her natural life and widowhood, and for the use and benefit of my children, Oakley Fay Parks Brown, Annie L. Parks, Goldie Ray Parks, Dorethey C. Parks and Lonnie O. Parks, share and share alike. I give my wife the right to manage, control and lease any and all of my property during her natural life and widowhood, with full authority and right to sell and dispose of any portion of my said estate for the purpose of maintainance and education of our said children or for the purpose of reinvesting same, she to be the exclusive judge of the property to be sold and of the necessity for the sale, as well as the reinvestment of same, and she is to act independent of the action of any court.

"Fourth. I desire and I hereby give my wife full management and control of my estate with authority to sell and make deed or deeds of conveyance to any part or parts thereof, for the purpose of maintaining herself and our children and for the purpose of reinvestment and to reinvest same as to her may seem for the best interest of our estate, and I hereby give her full authority to reinvest any part of said estate as to her may seem for the best interest of my estate, so long as she remains a widow, or so long as she may desire to hold the community estate, together, she to be the exclusive judge of the necessity to sell and of the kind of investment to be made. In case my wife, Laura Parks, shall marry again, or in case she should grossly mismanage or squander my estate, then and in that event, I desire that all of my property on hand shall go to my said children and I hereby bequeath to them, Oakley Fay Parks Brown, Annie L. Parks, Goldie Ray Parks, Dorethey C. Parks and Lonnie O. Parks, the remainder of my estate, then on hand, share and share alike, subject however to the provision hereinafter made.

"Fifth. I desire that neither of my children shall dispose of their interest in my estate or any part thereof, in any manner whatever, contrary to the wishes of my wife during her widowhood. And in the event that they or either of them shall attempt to sell their interest in my estate or transfer or dispose of same in any manner whatever, other than meets with the entire approval of my wife, Laura Parks, at any time during her widowhood, then and in such event the bequest above made as to such a one, either or all of them as may attempt to break my will or disregard my wishes herein stated shall be and is hereby revoked as to such a one either or all of them as may attempt to break my will or disregard my

wishes expressed, and in lieu of such bequest herein made to such a one, I hereby bequest to each of them the sum of One Hundred Dollars, which is to be their full share in my estate and the balance of my estate shall go to my other children not contesting said will or disregarding my wishes herein expressed, share and share alike.

"Sixth. I hereby nominate and appoint my beloved wife, Laura Parks, as the sole and independent executrix of this my last will and testament without bond and it is my wish and I hereby provide that the probate court or other courts of Dallas county or in any other county in the state of Texas or in the state of Oklahoma shall have no further jurisdiction or take any further action with reference to my estate, other than to probate this my will and require the filing of an inventory and appraisement of my estate.

"Seventh. I hereby appoint my beloved wife, Laura Parks, as guardian and trustee of the person and estates of our minor children, Annie L. Parks, Goldie Ray Parks, Dorethey C. Parks and Lonnie O. Parks, without bond, she to have control, management and right to dispose of any and all property belonging to said minors, without the supervision and orders of the probate court of the state of Texas or the state of Oklahoma, hereby giving her full authority to sell, rent, lease, manage and dispose of any part of their estate, and to reinvest same in any manner that to her seems for the best interest of their estate, she to be the judge thereof. In case of a partition of the property and she remains the guardian of our children and their estate, I desire she shall continue to act independent of the court and shall not be required to give bond, but I desire that she make the annual reports to the court as provided by law.

"Eighth. In the event that my beloved wife, Laura Parks, shall marry again, then I hereby provide that all of her authority as independent executrix without bond shall cease and that all property then remaining shall immediately vest in my said children and be partitioned among them share and share alike, as herein provided."

That will was duly admitted to probate by the county court of Dallas county, Tex., and by the county court of Muskogee county, Okla. Laura Parks, one of the plaintiffs in error, was appointed executrix of the estate by the county court of Muskogee county, Okla., and qualified as such. The record shows that, while the probate proceeding was pending in the county court of Muskogee county and after the qualification of Laura Parks as executrix of that estate, she, individually, as trustee, and as executrix under the will of O. F. Parks, deceased, executed and delivered a deed to the property

in question to H. W. Sanderson; that that deed was filed for record on March 28, 1923, at 8:00 o'clock a. m.; that thereafter and on that date H. W. Sanderson executed and delivered the note and real estate mortgage involved in this action to J. C. Culbertson; that thereafter and on that date H. W. Sanderson conveyed the property back to Laura Parks; that thereafter J. C. Culbertson assigned the note and mortgage involved in this action to the defendant in error; that no return of the sale of the real estate was made by the executrix to the county court of Muskogee county; that the county court of Muskogee county made no order approving or confirming that conveyance; that no decree of distribution of the estate was made by the county court of Muskogee county; that notice to creditors was given by the county court of Muskogee county; that the time for presentation of claims expired; that no claims against the estate had been presented, and that the executrix received more than sufficient money to cover the expense of the administration.

The first legal question for determination is whether the will vested Laura Parks with an estate absolute or in trust.

By a provision of the will, the testator gave and bequeathed the estate to his wife, Laura Parks, "in trust during her natural life and widowhood, and for the use and benefit of my children, * * * share and share alike." By another provision thereof, Laura Parks was given the right "to manage, control and lease any and all of my property during her natural life and widowhood, with full authority and right to sell and dispose of any portion of my estate for the purpose of maintainance and education of our said children or for the purpose of reinvesting same, she to be the exclusive judge of the property to be sold and of the necessity for the sale, as well as the reinvestment of same, and she to act independent of the action of any court." That the gift and bequest to Laura Parks was intended by the testator to be limited in some manner and not to be absolute is evidenced by a further provision of the will authorizing her to manage and control the estate with authority to sell and make deeds of conveyance to any part or parts thereof, "for the purpose of maintaining herself and our children and for the purpose of reinvestment * * * so long as she remains a widow, or so long as she may desire to hold the community estate, together, * * *" and by a further provision of the will that "In case my wife, Laura Parks, shall marry again, or in case she should

268

grossly mismanage or squander my estate, then and in that event, I desire that all of my property on hand shall go to my said children and I hereby bequeath to them, * * * the remainder of my estate, then on hand, share and share alike, subject however to the provision hereinafter made." A provision thereinafter made was that "neither of my children shall dispose of their interest in my estate or any part thereof, in any manner whatever, contrary to the wishes of my wife during her widowhood," with a penal provision for a breach thereof that the bequest to that child should be revoked; that that child would take the sum of $100 as his full share in the estate, and that the balance of the estate should go to the other children. Another provision of the will was that, in the event of the marriage of Laura Parks, all of her authority as executrix without bond should cease and that all of the property then remaining should immediately vest in the children of the testator and be partitioned among them, share and share alike as therein provided. We must conclude that the gift and bequest to Laura Parks was not absolute, but limited.

The language used by the testator was that the gift and bequest to her was "in trust during her natural life and widowhood, and for the use and benefit of my children, * * * share and share alike," and that "I hereby appoint my beloved wife, Laura Parks, as guardian and trustee of the person and estate of our minor children, * * * without bond. * * *" We decline to follow the rule stated in Axtell v. Coons, 82 Fla. 158, 89 So. 419, and the decision in Mercantile National Bank v. Parsons, 54 Minn. 56, 55 N. W. 825. Under the rule stated in Hill v. Hill, 49 Okla. 424, 152 P. 1123; Hill et al. v. Hill et al., 54 Okla. 441, 153 P. 1185; Colton v. Colton, 127 U. S. 300, 32 L. Ed. 138, 8 S. Ct. 1164; C., M. & St. P. R. R. Co. v. Des Moines Union Ry. Co., 254 U. S. 196; McMullen v. Sims (Tex.) 37 S. W. (2d) 141; Keeler v. Lauer (Kan.) 85 P. 541; Keating v. Keating (Iowa) 165 N. W. 74; Armstrong v. Armstrong (Ky.) 225 S. W. 501; Orr v. Yates (Ill.) 70 N. E. 731; Holsapple v. Schrontz (Ind.) 117 N. E. 547; Hoyt v. Bliss (Conn.) 105 Atl. 699; Re Pittock (Ore.) 199 P. 633, and Mackenzie v. Los Angeles Trust & Savings Bank (Cal.) 178 P. 557, and sections 1579, 1583, and 1587, O. S. 1931 (sections 11264, 11268 and 11272, C. O. S. 1921), we hold that the testator intended to and did create a trust in his estate and did thereby create Laura Parks the trustee

of that trust estate, under the provisions of sections 11808, 11828, 11829, and 11830, O. S. 1931 (sections 8462, 8473, 8474, and 8475, C. O. S. 1921).

In Hill et al. v. Hill et al., supra, this court held:

"Where a testator by the terms of his will gives and bequeaths real property to a certain trustee, named, and specifically authorizes and directs said trustee, on the happening of an event certain, to convey said real estate to certain named heirs, held, that such bequest is valid under section 6665, Revised Laws 1910, as a power in trust, and that the heirs named as beneficiaries have enforceable rights under the terms of the bequest, which a court of equity, in good conscience, is bound to protect and enforce."

That rule of law is applicable in the case at bar. The decisions of this court in Miller v. Irey et al., 150 Okla. 240, 1 P. (2d) 654; Watkins et al. v. French, 149 Okla. 205, 299 P. 900, and Roberson et al. v. Hurst, 80 Okla. 115, 190 P. 402, have no application herein. They are applicable only where the power and distribution is "not accompanied by any trust."

Another legal question presented for determination is whether or not Laura Parks, as trustee under the provisions of the will, was authorized to convey the property. By the provisions of the will, Laura Parks was given the right to manage, control, and lease any and all of the property during her natural life and widowhood, with full authority and right to sell and dispose of any portion thereof, "for the purpose of maintainance and education of our said children, or for the purpose of reinvesting same, she to be the exclusive judge of the property to be sold and of the necessity for the sale, as well as the reinvestment of same, and she to act independent of the action of any court." She was given authority to sell and make deeds of conveyance to any part or parts of the property, "for the purpose of maintaining herself and our children and for the purpose of reinvestment," so long as she remained a widow, she to be the exclusive judge of the necessity to sell and of the kind of investment to be made. The language of the will requires us to hold, and we do hold, that Laura Parks was authorized, as trustee, to convey the property.

We decline to determine whether or not Laura Parks was authorized to mortgage the land, for the reason that the record shows that she did not mortgage it. While

the record shows that the conveyance to Sanderson was only for the purpose of enabling him to mortgage the property, that fact was not known to the defendant in error at the time she purchased the mortgage. The record shows that when she purchased the mortgage she was without any knowledge of the purpose for which the conveyance was made by the trustee to Sanderson.

We will not determine the contention that Laura Parks had no right to convey the property as executrix without the approval of the county court. The conveyance was by Laura Parks, individually, as trustee, and as executrix. Since she had the power to convey it as trustee, it is immaterial whether or not she had the power to convey it as executrix.

The plaintiffs in error contend that Laura Parks, as trustee, had no authority to convey the land while she was acting as executrix and until a decree of distribution had been entered in the probate proceeding. In support of that contention they cite Goad et al. v. Montgomery et al. (Cal.) 51 P. 681; In re Higgins' Estate (Mont.) 39 P. 506; In re Roach's Estate (Ore.) 92 P. 118; Jameson v. Goodwin et al., 43 Okla. 154, 141 P. 767; Rust et al. v. Gillespie, 90 Okla. 59, 216 P. 480; in re Gentry's Estate, 158 Okla. 196, 13 P. (2d) 156, and section 1193, O. S. 1931 (section 1197, C. O. S. 1921). By the provisions of that section, an executor or administrator is required to take into his possession all of the estate of the decedent, real and personal, except the homestead. By the decision of this court in Jameson v. Goodwin et al., supra, all of the property of the decedent, real and personal, remains in the possession of the administrator or executor until administration of the estate is had or a decree of distribution is made by the county court. In Rust v. Gillespie, supra, it was held that a county court has no jurisdiction over the subject of trusts or regulation and control of trust estates. In Re Gentry's Estate, supra, it was held that the rents and profits from the land constituting an estate are applicable to the payment of debts and expenses of administration and that the administrator is entitled to collect the same until the estate is closed, without any hindrance by the district court in a partition proceeding. Neither the provisions of the section cited nor the holdings of this court are to the effect that a devisee under a will may not convey such interest as he acquires in the estate, prior to the entry of a decree of distribution by the

county court. The California decision cited is nowise in point. By that decision that court held that power granted to an executor to convey property did not authorize him, as trustee, to convey the property after the property had been delivered by himself as executor to himself as trustee. While there is some language in the Montana decision, supra, which might be the basis for the rule contended for by the plaintiffs in error, that language is obiter dictum. The issue in that case was whether or not the trial court exceeded its jurisdiction in making an order requiring the executors of a will to file an inventory and to account. They contended that they were not required to do so because they were named as trustees in the will. A rule requiring an executor to file an inventory and to account as such in no wise operates to deprive a devisee of authority to convey the property devised to him. So, also, with reference to the Oregon decision, wherein the issue was the authority of the county court to require an executor to account.

The plaintiffs in error contend that our procedure differs from the procedure of states where the executor or administrator does not come into possession of real property unless it is necessary to use the same for the purpose of payment of debts. We agree with the plaintiffs in error that the decision of the issue under consideration must be based on the statutes of this state. Among those statutes is section 1603, O. S. 1931 (section 11288, C. O. S. 1921), by which testamentary disposition is presumed to vest at the testator's death. The provisions of section 1366, O. S. 1931 (section 1367, C. O. S. 1921), authorize the distribution of real estate by the county court "although some of the original heirs, legatees or devisees may have conveyed their shares to other persons," and it requires the assignment of shares of the estate to the person holding the same, in the same manner as they otherwise would have been assigned to such heirs, legatees or devisees.

In Lusk et al. v. Green et al., 114 Okla. 113, 245 P. 636, this court approved a distribution that had been made to a grantee of two of the devisees named in a will of an interest in the estate, under the authority of that provision.

In Re Estate of Hibdon, 102 Okla. 145, 228 P. 154, this court held:

"Under section 11300, Comp. Stat. 1921, all property, both real and personal, of all

persons who die intestate passes to the heirs of such intestate, subject to the control of the county court and subject to administration.

-"Under said section the title to the property of an adult dying intestate automatically passes by operation of law to the heirs of such intestate, subject, however, to administration, but the title to property of minors does not pass automatically to his heirs, but must pass through the process of guardianship as provided by article 14, chap. 5, Comp. Stat. 1921, subject to the administration provided for in section 11300, supra."

The order of this court in that case was:

"It is therefore the opinion of this court that the judgment of the district court should be reversed, with directions to grant to J. W. Porter and S. C. Newbern the opportunity, upon reasonable notice and within reasonable time, to pay into court sufficient money with which to pay the debts involved herein, with 6 per cent. interest thereon from the date of their allowance by the county court, together with the costs of administration, and that upon their failure to pay said money into court as herein ordered, the petition of the administrator be reinstated and the prayer thereof granted, and that the lands be sold to satisfy said debts."

In Re Gentry's Estate, supra, the record showed that one Midgley had purchased an interest in the estate the probate of which was pending and prior to the entry of a decree of distribution thereof; that the district court had decreed a partition of the real estate among the claimants thereto and had made an order, the effect of which was to give Midgley a portion of the rents and profits which had been collected by the administrator free and clear from any charge for debts of the deceased or costs of the administration. This court said:

"When Midgley purchased the two-thirds interest in the land, he stood upon no better footing than did the heirs from whom he purchased. He knew that they acquired title through Curtis Gentry, deceased, and was presumed to know that the land, together with the rents and profits, might be charged with any indebtedness of Curtis Gentry and the expense of administration. Therefore, he was entitled to only two-thirds of the rents and profits after the payment of the expense of administration.

"The county court was not bound, as the judge thought, by the order of the district court requiring the administrator to reimburse Midgley in full for his two-thirds of the rents for the years 1927 and 1928."

It directed that the debts and expense of

the administration should be paid and that Midgley should be given two-thirds of the assets remaining in the hands of the administrator thereafter.

It will thus be seen that this court has repeatedly sustained a sale of the assets of an estate which was made while the administration of the estate was pending, and it will be noted that in each of those cases the conveyance was held to be subject to the order of the county court.

A provision of the California statutes is identical with the provisions of section 1366, supra. In William Hill Co. v. Lawler (Cal.) 48 P. 323, that court said:

"Section 1678, Code Civ. Proc., provides:

"'Partition or distribution of the real estate may be made as provided in this chapter, although some of the original heirs, legatees or devisees may have conveyed their shares to other persons, and such shares must be assigned to the person holding the same in the same manner as they otherwise would have been to such heirs, legatees or devisees.'

"The provisions of this section extend to the distribution as well as to the partition which is provided in that chapter, and render the decree as conclusive upon those to whom the heirs have conveyed the estate as it otherwise would have been upon such heirs, legatees or devisees'; and the decree is equally conclusive whether the estate is distributed to the persons in segregated parts or in undivided proportions."

In Dunn v. Schell et al., 122 Cal. 626, 55 P. 595, the record showed that one of the devisees under the will had mortgaged his interest in the estate after the will was admitted to probate and while the estate was in process of administration. That court said that:

"It was competent for him to make the mortgage in suit, but upon a sale to satisfy the same the purchaser will take only the share and interest in the property of the decedent which, but for the mortgage and the foreclosure, the mortgagor himself would have taken."

It held:

"It is no defense to the foreclosure of a mortgage of a debtor's interest as devisee to certain land that the will required the land to be kept 'intact' and undivided until the majority of a certain other devisee, since, under Civ. Code, secs. 690, 694, 1341, the interest of the mortgagor became vested at the death of the testator, and under sections 699 and 2947 he could incumber it the same as if it were an estate in possession; but under the foreclosure sale the purchaser

would take the mortgagor's interest, subject to the directions of the will."

We think, and hold, that the Oklahoma statutes, supra, has the same meaning as the identical California statute as determined by the decisions of the Supreme Court of California, supra. Such is the effect of the decisions of this court in Oil Well Supply Co. v. Cremin, 143 Okla. 57, 287 P. 414, and White House Lumber Co. v. Howard et al., 142 Okla. 163, 286 P. 327. In the latter case this court held that:

"The lien of a judgment against an heir to the real estate of an intestate attaches only to that portion of the real estate of the intestate, is any, distributed by the county court to the judgment debtor, and when any portion of such real estate is so distributed, the lien of the judgment relates back to the time of its entry on the judgment docket."

The decision in each of those cases was to the effect that the lien of a judgment against an heir does not attach so as to prevent the distribution of the estate under the statutory procedure in probate. In Oil Well Supply Co. et al. v. Cremin et al., supra, it was said that such a judgment becomes a lien only upon the land distributed to the judgment debtor, "at which time it relates back to the time of its entry on the judgment docket."

In Eller v. Noah, 66 Okla. 222, 168 P. 819, this court said that an administrator was required to show that the land in question was charged with debts owing by the estate or costs of the administration before he is entitled to prevail after the heirs had conveyed their interests in the land in question. It was not contended in the pleadings in this case, and there is nothing in the record to show, that the property involved in this action was necessary for purposes of administration. Under the facts shown by the record in this case, the only purpose of administration was to distribute the property in accordance with the terms of the will to Laura Parks as trustee.

We hold that a devisee under the provisions of a will may convey the real estate devised while the probate proceeding is pending and prior to the entry of the decree of distribution, subject to the payment of the indebtedness against the estate, the costs of administration, and such other orders as the county court is authorized to make under its probate jurisdiction, the purchaser thereof buying at his own risk subject to administration.

We find no error in the judgment of the trial court, and that judgment is in all things affirmed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, McNEILL, OSBORN, BAYLESS, BUSBY, and WELCH, JJ., concur.